# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **D.H. and E.H.**

**No. 17-0238** (Kanawha County 16-JA-124 & 16-JA-224)

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.H., by counsel Jason S. Lord, appeals the Circuit Court of Kanawha County's February 10, 2017, order terminating his parental rights to D.H. and E.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), W. Jesse Forbes, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that (1) there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect in the near future and (2) the DHHR provided reasonable services to achieve reunification of the family.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2014, the DHHR filed an abuse and neglect petition against petitioner and the mother that alleged the parents' home was in deplorable condition and unfit for human habitation. According to the petition, the home was filled with trash, dirty dishes, discarded food, and dirty diapers. The DHHR further alleged that the home lacked electricity and was heated by leaving the burners from the gas stove running while unattended. Child D.H., then approximately

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

twenty months old, was "absolutely filthy" when removed from the home.[3] Accordingly, the DHHR alleged that the parents failed to provide the child with appropriate food, clothing, shelter, supervision, medical care, or education. The DHHR further alleged that the parents' conduct constituted extreme maltreatment. Petitioner waived his preliminary hearing that same month.

In June of 2014, petitioner submitted to a psychological evaluation that resulted in a guarded prognosis for an improvement in his ability to properly parent the child. According to the psychologist, petitioner lacked the "knowledge and skills needed to manage a household" due to the fact that "[e]ven with a commitment to change and much effort, [he was] likely to have difficulty learning new information and applying it." In August of 2014, the circuit court held an adjudicatory hearing, at which petitioner admitted that his home was in a condition that rendered it unsuitable for habitation. The circuit court accepted petitioner's stipulation and adjudicated him of neglect. The circuit court additionally granted petitioner a post-adjudicatory improvement period that required he participate in parenting and adult life skills education and comply with any recommendations from his psychological evaluation. The circuit court also granted the parents supervised visitation with the children and ordered the DHHR to assist the family financially.

Over the next several months, the circuit court conducted review hearings and continued the parents' improvement periods several times. At a review hearing in March of 2015, the DHHR recommended that the parents rid their home of a lice infestation. Additionally, the circuit court granted the guardians' motion to cease visitation if the children contracted lice again. The circuit court also found that, despite the DHHR's reasonable efforts to maintain the family, the efforts failed. In May of 2015, the circuit court found that the parents' improvement periods had expired and set the matter for disposition.

In June of 2015, the circuit court held a dispositional hearing, at which it granted both parents improvement periods as disposition. The terms and conditions of petitioner's improvement period included participation in parenting and adult life skills education, obtaining and maintaining appropriate housing, and following all recommendations from the psychological evaluation. The circuit court held a review hearing in August of 2015, and continued the parents' improvement periods.

In a court summary from December of 2015, the DHHR informed the circuit court that the parents had recently admitted to abusing marijuana. Despite the DHHR's concern over the parents' admissions, the circuit court thereafter continued the parents' improvement periods at a review hearing in February of 2016. The circuit court further ordered more intensive services for the parents by directing the DHHR to provide them with twelve hours of parenting and adult life skills education per week so that the parents could learn to maintain proper hygiene and a suitable home for the children. The circuit court also directed the parents to submit to updated parental fitness evaluations by a psychologist.

---

[3]Child E.H. was not yet born when the DHHR filed its initial petition. In July of 2014, the DHHR filed an amended petition to include E.H., who was born that same month. The amended petition contained the same allegations concerning the condition of the parents' home.

In August of 2016, petitioner submitted to the required psychological evaluation. The updated evaluation resulted in findings similar to his prior evaluation in 2014. However, the psychologist's ultimate prognosis following this evaluation was poor, with the psychologist noting that she could not "ethically provide recommendations for additional interventions" in petitioner's inability to properly parent the children, given their young ages and the protracted nature of the proceedings. According to the psychologist, there was a "low likelihood that continued services [would] benefit the parents in any meaningful way."

In January of 2017, the circuit court held a dispositional hearing, at which both the guardian and the DHHR moved for termination of the parents' parental rights. The circuit court found that the parents failed to make sufficient improvement such that the conditions of abuse and neglect in the home were corrected. The circuit court further found there was no reasonable likelihood the parents could substantially correct the conditions of abuse and neglect in the near future, based on their failure to follow through with the family case plan. According to the circuit court, the children's best interests required termination of parental rights. Therefore, the circuit court terminated petitioner's parental rights to the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the home. On appeal, petitioner argues that certain DHHR workers testified that he participated in services below, including adult life skills and other services designed to remedy the conditions of

---

[4]Both parents' parental rights to the children were terminated below. According to the DHHR, the children are placed in a foster home with a permanency plan of adoption therein.

abuse and neglect in the home. Petitioner further argues that his own testimony established that he obtained a suitable home for the children. However, petitioner's arguments on appeal ignore the fact that he failed to remedy the conditions of abuse and neglect present in the home sufficient to safely return the children to his care. We have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Here, the record is clear that petitioner simply failed to remedy the conditions of abuse and neglect in the home such that returning the children to his care was not in their best interests.

During the proceedings, petitioner submitted to two separate psychological evaluations; one in 2014, and another approximately two years later in 2016. Despite the fact that the DHHR provided intensive services to petitioner in the intervening years, the prognosis for petitioner's ability to improve his parenting actually deteriorated over time. According to the psychologist who evaluated petitioner in 2016, his prognosis for improvement was poor, given petitioner's inability to implement what he was taught in services or otherwise demonstrate an ability to provide the children with a suitable home. West Virginia Code § 49-6-5(b)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

While it is true that petitioner complied with services during the proceedings, his inability to implement what he learned in those services resulted in the persistence of the conditions that necessitated the petition's filing. As such, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

In support of this assignment of error, petitioner also argues that he should have been entitled to additional time to show that he could correct the conditions of abuse and neglect in the home. We do not agree. The record is clear that petitioner was granted multiple extensions to both of his improvement periods below in order to establish his ability to correct the conditions of abuse and neglect. Moreover, the circuit court specifically required the DHHR to provide more intensive services later in the proceedings in an effort to assist petitioner in correcting these conditions. Despite the extended nature of the proceedings below, the record supports the circuit court's findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of parental rights was necessary for the children's wellbeing. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. We have also previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the proceedings below.

Finally, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family. In support of this assignment of error, petitioner relies on the follow:

"Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). We do not find petitioner's argument compelling, as the record is clear that the DHHR satisfied its burden to provide services in this matter. First, the record shows that, as it became apparent that the level of services provided was insufficient to remedy the conditions of abuse and neglect in the home, the DHHR provided more intensive services to petitioner. This included approximately twelve hours of in-home services per week designed to teach petitioner how to maintain basic hygiene and a suitable home for the children. Despite these intensive services, petitioner was still unable to remedy the conditions in the home. Further, petitioner's second psychological evaluation noted a "low likelihood that continued services [would] benefit the parents in any meaningful way." As such, it is clear that a determination was made regarding petitioner's inability to adequately care for the children with intensive long-term assistance. The record shows that, even with increased assistance, petitioner was simply unable to provide a suitable home for the children. Accordingly, we find no error in the circuit court's findings regarding the sufficiency of the DHHR's services below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 10, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 16, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker